# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**PAMELA S. ANTON,** an individual
      Plaintiff,

vs.

                                                **CIVIL ACTION NO. 01-40098**

                                                **HONORABLE PAUL V. GADOLA**
**SBC GLOBAL SERVICES, INC.,** d/b/a                  **HONORABLE STEVEN D. PEPE**
**AMERITECH INFORMATION SYSTEMS,**
**INC.,** a/k/a **AMERITECH,** a/k/a
**SBC/AMERICECH,** a Delaware corporation,
      Defendant.
_____/

**CHERYL FREEMAN SNIPES,** an individual
      Plaintiff,

vs.

                                                **CIVIL ACTION NO. 01-40213**

                                                **HONORABLE PAUL V. GADOLA**
**SBC GLOBAL SERVICES, INC.,** d/b/a                  **HONORABLE STEVEN D. PEPE**
**AMERITECH INFORMATION SYSTEMS**
**INC.,** a/k/a **AMERITECH,** a/k/a
**SBC/AMERICECH,** a Delaware corporation,
      Defendant.
_____/

## ORDER FOLLOWING NOVEMBER 22, 2005 HEARING

On November 22, 2005, a hearing was held with regard to Plaintiffs' Motion in Limine

(Dkt. # 141).  For reason stated below and stated in the court record during the hearing Plaintiffs'

Motion is GRANTED IN PART.

    1. Based on defense counsel's clarification at the hearing, Plaintiffs' request to establish

as fact for trial that the "undisputed facts" identified in the Report and Recommendation is

GRANTED as follows:  with regard to factual assertion (1.) it will remain an open question as to

whether or not Plaintiffs requested a copy of the Sales Compensation Plan; fact (2.) is admitted

with the addition that the Plan became available from the SBC electronic database on June 26,

2000; fact (3.) is accepted by defense counsel without modification; Plaintiff will need to

establish fact (4.).

Thus, for trial the following are undisputed facts:

(1.)  SBC failed to provide a paper copy of the Sales Compensation Plan to either
Plaintiff.
(2.) The Plan could not be printed from the SBC electronic database
until June 26, 2000.
(3.) There was no signed employee acknowledgment of either
the 1999 or 2000 Plan as had been the practice in the years before and since.

2. Plaintiffs' request to establish as fact for the trial that the parties had an implied-in-fact

contract requiring Plaintiffs to be paid a commission in some amount on the CCI Data Services

agreement and Plaintiffs' request to establish as fact for trial the matters which have been

admitted as a result of the Answer or the admissions to Plaintiffs' First and Third Requests for

Admission is GRANTED.  Plaintiffs' objections as to the untimeliness of Defendant's Responses

to Plaintiffs' First and Third Requests for Admission are overruled and Defendant's answers to

these Requests for Admissions are accepted notwithstanding the responses being late.

Notwithstanding the fact that Defendant should have filed a motion to extend the time for

response or a motion to file tardy responses, an earlier objection by Plaintiffs to the Defendant's

Responses, or a motion to strike them or to deem the Requests for Admission admitted would

have resulted in a similar ruling that Defendant's Responses should be accepted even though a

bit late.  This earlier clarification of the issue would have avoided any prejudice Plaintiffs'

counsel now asserts.

3. Plaintiffs' request to establish all testimony and statements of Defendant's Fed R. Civ.

P. 30(b)(6) witnesses Laura Pike, Evan Parke, Frank Klimko, Joe Luginski, and Tedd Payne, is

granted with respect to the witnesses statements of fact.  Michael Hamilton's testimony and statements cannot be challenged as hearsay under Fed R. Evid. 801.

4. Plaintiffs' objections 1, 2, 3, 4, and 5 are DENIED for reasons stated here and on the court record.  Plaintiffs questioned whether the 1999 and 2000 Sales Compensation Plans were business records under Fed. R. Evid. 803(6) and whether the version proffered  – likely printed in early 2001 –  is the best evidence of the 1999 and 2000 Sales Compensation Plans.  They also question whether the 1999 Plan is even relevant.  They challenge the authenticity and evidentiary basis of the usage monitor log on asserted access to the 2000 Sales Compensation Plan and the admissibility of the CD version of the Sales Compensation Library and related documents prepared by Tedd Payne and his related testimony.[1]

These two plans, the access log and the Sales Compensation Library are being proffered as part of the factual background and circumstances for the jury to determine the nature and scope of the implied in fact contracts prior to the June 2000 CCI contract. These implied in fact contracts are central to these two cases.  Defendant contends that these documents corroborate that the parties  (i.)  did not agree to an implied in fact contract to pay on all contracts commissions at a set percentage of the life of the contract revenue and (ii.) did agree to an implied in fact contract that included a large sales exception and reserved to the employer through the GBS Sales Compensation Team the absolute discretion to determine commission payments, and (iii.) these documents demonstrate that each Plaintiff had notice of these terms of

---

[1] For the purposes of Rule 803(6), "it is immaterial that the business record is maintained in a computer rather than in company books." *United States v. Catabran,* 836 F.2d 453, 457 (9th Cir.1988) (citation and internal quotation marks omitted).  Rule 803(6) allows for the admission of a "data compilation, in any form," so long as the compilation meets the requirements of the rule.  *Id. Sea-Land Service, Inc. v. Lozen Intern., LLC.* 285 F.3d 808, 819 (9th Cir. 2002).

the implied in fact agreement, or the reasonable availability and opportunity for notice.

To the extent that these documents, including the Lotus Notes Sales Compensation Library, are proffered to demonstrate notice to Plaintiffs or the availability and opportunity for such notice of the terms of the implied in fact contract, they have a significance independent of the truth of matters asserted in them.  To the extent that they are being asserted to show that the parties agreed to an implied in fact contract that included, in part, agreement on the large sales exception and the absolute discretion of the SCT in setting commissions involving Life Cycle Revenues over $2 million, they are being asserted for their content albeit not necessarily the truth of the matter asserted in their content.

Thus, because the content of these documents has an independent legal significance to establish a portion of the implied in fact contract, the Plaintiff's concern as to whether they are business records under the business records exception to the hearsay rule under Fed. R. Evid. 803(6) is not relevant.  While they are business records, they are not hearsay, but rather are allegedly part of terms of implied in fact contracts.  Thus, the challenge to them is not based on needing to find an exception to the hearsay rule under Fed. R. Evid. 803(6), but rather are they the "best evidence" of the content of a term of the implied contracts.[2]

The best evidence rule provides that the original of a "writing, recording, or photograph" is required to prove the contents thereof.  Fed. R. Evid. 1002.  A writing or recording includes a

---

[2] While the distinction may be subtle, they are not being proffered by Defendant to prove that its SCT will review commission payments over $2 million and will determine the commissions to be paid (which is what the content of the documents say in part).  Rather they are being asserted to prove that the parties agreed in part that the SCT would have this power to set commissions and that the Plaintiffs had actual or reasonable opportunity to know of this limitation on commission structure notwithstanding a uniform course of conduct between the parties in which the Plaintiffs had in the past been paid a fixed rate of commission on the life of the contract revenue, even on contracts that had liquidated damage provisions.

"mechanical or electronic recording" or "other form of data compilation."  Fed.R.Evid. 1001(1).

An original is the writing or recording itself or, "[i]f data are stored in a computer or similar

device, any printout or other output readable by sight, shown to reflect the data accurately."

Fed.R.Evid. 1001(3).  *Cross v. United States,* 149 F.3d 1190 (10th Cir. 1998).  Where the rule

applies, the proponent must produce the original (or a duplicate, *see* Fed.R.Evid. 1003) or

explain its absence.  Fed.R.Evid.1002, 1004.  The rule's application turns on "whether contents

are sought to be proved."  Fed.R.Evid.1002 Advisory Committee's note.  *United States v.*

*Bennett,*  363 F.3d 947, 953 (9th Cir. 2004).[3]  Unlike proof of a historical event, a conversation, a

description of a location for which the best evidence rule does not apply and thus can be proved

by testimony, with or without corroborating documents that may exist, the best evidence "rule

does apply when a witness seeks to testify about the contents of a writing, recording or

photograph without producing the physical item itself--particularly when the witness was not

privy to the events those contents describe.  *See* Fed.R.Evid. 1002 Advisory Committee's note."

*Id.*

Here, much of the "original" electronic data in its pre-contract early 2000 exact state no

longer exists because the files were overwritten with various computer changes made in that and

subsequent years.  Under Rule 1004 of the Federal Rules of Evidence, "[t]he original is not

required, and other evidence of the contents of a writing, recording, or photograph is admissible

---

[3]

"[A]n event may be proved by nondocumentary evidence, even though a written record of it was
made."  *Id.*  Accordingly, the best evidence rule is inapplicable when a witness merely identifies
a photograph or videotape "as a correct representation of events which he saw or of a scene with
which he is familiar."  *Id.; see also United States v. Workinger,* 90 F.3d 1409, 1415 (9th
Cir.1996) ("[A] tape recording cannot be said to be the best evidence of a conversation when a
party seeks to call a participant in or observer of the conversation to testify to it.  In that instance,
the best evidence rule has no application at all.").  *United States v. Bennett,* 363 F.3d 947, 953
(9th Cir. 2004).

if--(1) ... all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." Fed.R.Evid. 1004(1).  As to the first inquiry, " '[b]y far the most common means of prov[ing] loss or destruction is the use of circumstantial evidence showing a diligent but unsuccessful search and inquiry for the document.' " *United States v. McGaughey,* 977 F.2d 1067, 1071 (7th Cir.1992) (quoting 5 Weinstein's Evidence ¶ 1004(1)[05] at 1004-18 (1983)). *United States v. Standing Soldier,* 538 F.2d 196, 203 (8th Cir.1976) (admitting secondary evidence after a witness "testified that he had attempted to locate the original note by contacting the criminal investigator and the FBI, but had been unable to find it, although he thought that it probably did still exist").   As to the second inquiry, courts have concluded that the mere possibility that someone has tampered with the proffered secondary evidence is insufficient to establish the proponent's bad faith.  *See United States v. Balzano,* 687 F.2d 6, 8 (1st Cir.1982). Similarly, the negligent destruction of documents has been held to be insufficient to establish bad faith.  *See Estate of Gryder v. Commissioner,* 705 F.2d 336, 338 (8th Cir.1983).

In the present case, both inquiries under Rule 1004(1) support the admissibility of secondary evidence.  As to the loss or destruction of the original, after significant delays Defendant nonetheless has presented evidence that its officials have undertaken a diligent search for the pre-June 29, 2000, CCI contract Lotus Notes version, and the proffered document are the nearest in time to the relevant document.  While the "original" was written over by the more recent computer versions, this was done in the ordinary course of business operations. There is no evidence of  purposeful destruction or withholding of original documents – albeit there was unnecessary delay in producing them.  Nor is there any evidence of the fabrication of this secondary evidence that would support a finding of bad faith under Fed. R. Evid 1004(1). Defendant also has witnesses who will testify that the relevant content of the documents

regarding the large sale exception and the SCT discretion have not been changed during the relevant periods, and indeed the 1999 Sales Compensation Plan's relevance is to demonstrate these exact provisions existed in the earlier plan to which Defendant contends both Plaintiffs also had electronic access.

Defendant has made a prima facie showing as to the authenticity of these documents and computer records under Fed. R. Evid. 901 that they are what they are purport to be and the ultimate question of their authenticity and the weight to accord them is for the jury.  *United States v. Harvey,* 117 F.3d 1044, 1049 (7th Cir. 1997).

5. Plaintiffs' objections 6, 7, and 8 will be resolved at a follow up hearing.

SO ORDERED.

Dated: December 13, 2005                                    s/Steven D. Pepe
Ann Arbor, Michigan                                        United States Magistrate Judge

Certificate of Service

I hereby certify that a copy of this Order was served upon the attorneys and/or parties of record by electronic means or U. S. Mail on December 13, 2005.

s/William J. Barkholz
Courtroom Deputy Clerk